IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| | : | |
| BRUCE G. MAUSHART, | : | BANKRUPTCY NO.: 5-11-bk-06432-JJT |
| | : | |
| | : | {**Nature of Proceeding**: Pennstar Bank's |
| DEBTOR | : | Objection to Chapter 13 Plan (Doc. #16)} |

# **OPINION**

The litigation pending before me raises an interesting issue of interpretation created by a phrase utilized in the Bankruptcy Amendments of 2005. As may be apparent, those amendments placed several constrictions on consumer filers because of perceived past abuses. Among those changes was included an anti-modification provision found in § 1325 of the Bankruptcy Code regarding vehicle purchases. The provision is referred to as the "hanging paragraph" due to its unnumbered placement at some distance from subsection (a)(5) to which it refers. More specifically, modification of a purchase money security interest is prohibited if incurred within 910 days (roughly 2 ½ years) prior to the petition for a vehicle "acquired for the personal use of the debtor." In the absence of statutory definition or legislative history, the courts have struggled mightily to define such a vehicle. See, for example, citations found in Robin Miller, J.D., *Effect of "Hanging" or "Anti-Cramdown" Paragraph Added to 11 U.S.C.A. § 1325(a) by Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA)*, 19 A.L.R.Fed. 2d 157 at §§ 14 & 15 (2007)(Motor vehicle acquired for debtor's personal use). One treatise has referred to the "horde of reported decisions that agree on just about nothing about the meaning of this phrase." Lundin & Brown, *Chapter 13 Bankruptcy*, 4th Ed. § 451.4 at ¶ 2.

Obviously, the issue is fact intensive. In this case, the entire factual record consists of

stipulated facts. Doc. #27-1. I have the benefit (or detriment) of 32 stipulated facts upon which to adjudicate the issue of whether this purchase was for "personal use." The plan Objector, Pennstar Bank, is the vehicle lienholder who perfected its lien in the Debtor's 2008 Chevrolet Uplander in 2010. In the stipulation, the Debtor explains that he was employed as an assistant at a funeral home and was told that his earnings could increase if his vehicle was suitable for transportation of human remains. Based on this representation, the Debtor traded in his existing vehicle, incapable of cadaver transportation, for the Uplander. While the parties have stipulated that this vehicle was purchased "solely" because it was suitable to transport human remains, (Doc. #27-1 at ¶ 19), they have also stipulated that the Debtor drives no other vehicle while attending to his personal matters. Doc. #27-1 at ¶ 29. As it turned out, most of his usage in 2010 was for personal use. Doc. #27-1 at ¶ 31. The Debtor's actual use shortly after purchase is certainly an indication of what his actual intent was at the time of purchase. *In re LaDeaux,* 373 B.R. 48, 51 (Bkrtcy.S.D.Ohio 2007). The stipulated fact of the Debtor's vehicle usage corroborates my factual finding that the Debtor's purpose in purchasing the Uplander was to reap some economic benefit from its use for the funeral home, but to otherwise utilize the vehicle for personal and nonbusiness reasons. I conclude that, while the "sole" reason for trading his existing vehicle for the Uplander was to utilize the new vehicle for body transport, that intended utilization was never to the exclusion of implementing the Uplander for personal use.

      This raises the pivotal legal issue. Does the Debtor's dual business/personal intention at the time of purchase of the vehicle negate the impact of the statute's antimodification provision? I turn first to the statutory language for guidance to its meaning. I conclude that the antimodification clause applies to vehicles purchased for "personal use." "A fundamental canon

of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). While the Debtor *hoped* to use the vehicle more in his work as an assistant at the funeral home, it is rather apparent that the Uplander was to be used personally until that hope was rendered a reality. As pointed out by one court, "the hanging paragraph does not use the words 'solely', 'exclusively', 'mostly', 'primarily', 'partially' or any other bright line." *In re Solis,* 356 B.R. 398, 409 (Bkrtcy.S.D.Tex. 2006).

Some courts have focused on whether the original purpose of the purchase was a "significant and material" personal use. *Id.* at 409. In a given case, such language may be helpful, but not so here. I state that because the stipulation of facts makes it apparent that this vehicle purchase may have been useful at some future time in the business ventures of the Debtor, but, until then, it would be utilized for personal benefit. Even a current intention to use it incidentally in business efforts does not alter the fact that the Uplander was purchased for personal as well as business use. Otherwise, the Debtor, who utilized only one vehicle, would not have divested himself of the vehicle he had traded in. This conclusion is consistent with the overall legislative effort in the 2005 Amendments to limit the benefits of bankruptcy otherwise enjoyed by consumer filers in favor of what has popularly become known as the "job-creators" or small businesspeople.[1] Furthermore, I will be guided by a canon of statutory construction that states, "where, as here, neither legislative history nor administrative interpretation sheds clear light on the meaning of an ambiguous statute, a court is bound only to render a decision that is

---

[1] A host of changes in the 2005 Amendments limited benefits of bankruptcy to consumer filers, such as, the means test; extended time between discharges; production requirements for tax returns; credit counseling requirements; and limitations on the automatic stay for repeat filers.

reasonable in light of the overall policy of the legislation under consideration and the commonly accepted meaning of the words used in the statute." *Anderson v. Babb,* 632 F.2d 300, 308 (4th Cir. 1980). As pointed out by the Eleventh Circuit Court of Appeals, the policy of BAPCPA (the 2005 Amendments) was to favor secured creditors, specifically automobile lenders. *In re Graupner*, 537 F.3d 1295, 1303 (11th Cir. 2008). In the absence of the congressional use of some modifier like "primarily" as used in § 722 of the Code, a Debtor's intent to purchase a vehicle for personal use, regardless of degree, will engage the anti-modification provision as a protection for the secured creditor.

My Order will follow.

By the Court,

Date: October 25, 2012

John J. Thomas, Bankruptcy Judge
(CMS)